Good afternoon, Your Honor. My name is David Fidler. I represent Appellant Lisa Strugala, along with Michael Brown, who's also on the line. There are a lot of issues in this case. I think they've been well briefed, but I wanted to hit a couple of them. The first one is the denial of our request for leave to amend the complaint. This would have dramatically altered the landscape of the case in terms of our breach of contract and breach of fiduciary duty claims were tossed out because we supposedly could not link our breach of contract claim to a specific provision in the contract. And so we had all these implied contract arguments, which are still there. Do we have the deed of trust in the complaint? I'm sorry? Is the deed of trust that you wanted to amend in the record? It is in the record, I believe, but it is not in the complaint. I know it's not in the complaint. I want to know where it is in the record. I don't have a page number for you in the record, but I do believe it is in the record. All right. I understand that. What is in it that you think is so critical? I'm sorry? What is in it that you think is so critical? Oh, it's very easy. There's the same theory. We are propounding the same theory of interest before principle in terms of allocation of payments. But does it incorporate the notion or state the notion that there is a contractual responsibility with regard to reporting to the IRS? No, there is a contractual responsibility to allocate interest between... Well, then you might have a cause of action against the bank for not doing that, but that's quite different from what your case is about, right? Well, if they do that, then they report correctly. It's only by virtue of them not having done it that they report it incorrectly. But so what? I mean, still, it doesn't say they had a report correctly or incorrectly, so it doesn't seem to change anything about the whole thing. I mean, I think that... Maybe you have another case, but this case. No, I think this case, it's part of the servicing of a mortgage to... And banks have whole departments for calculating and maintaining interest payments. And the way they do that is based off of the language of the contract. So everything springs out of the contract. And if they breach the contract in terms of allocation, then they report wrongly. And that's where, if they reported correctly... But you still are sitting on top of a California state issue as to whether the obligation to report to the IRS is an implied term of a mortgage contract. That problem doesn't change with the deed of trust. Okay. So we can go forward and decide that question without regard to the deed of trust or the amending question. The issue was whether we could tie it to a provision of the contract for breach of the covenant of good faith and fair dealing as well. And that would also, we would contend, link it to the contract, the conduct of Flagstar, which they made one mistake, and then they compounded it, and then they didn't tell anybody. And that resulted in my clients permanently losing or being damaged because the statute of limitations to amend returns went by. And this was all done without her knowledge. And indeed, none of the people to whom this was done yet know because Flagstar didn't tell anybody. And it should have. And the district court was wrong when it said that we did not cite any authority for the fact that once Flagstar discovered its error, it was required to issue corrected Forms 1098. If it had done... But that's all as a matter of federal tax law. I mean, you either have a street law contract action or a fraud action, or you don't. Ultimately, you have to tie yourself to a state law cause of action. Correct. I have to tie myself to a state law cause of action, which can use the violation of the federal statute as the basis for it. All right. So that's the question. Where are you getting that? Where am I getting that? You can. I mean, there's the farm raised salmon case. There's the Rose case. There are a number of cases which hold that the violation of the federal statute, even if it does not itself have a cause of action behind it, or even if the Congress has not authorized a private right of action, can still be used as state law as the basis for a state law claim. That's true as to the preemption question, but there's still a California law question as to how you get to apply this requirement into the California contract. Well, as I said, if they had allocated correctly and there's a duty to service the mortgage, which includes issuing Forms 1098, because that's part of the law that obligates Flagstar, then what you end up with is a breach of contract, which leads to damages. And that's where you get. You don't even really need to have the whole question of whether or not the issuance of the Form 1098 is the linchpin of the cause of action. The linchpin of the cause of action is the breach of contract in the allocation in the first instance of the payment. So where is that in the contract, the allocation? The allocation in the note. This is where the motion to amend was important. In the note, it says allocation of monthly payments are to be interest before principle in the deed of trust, which we didn't have at the time we filed the complaint. And we only later says allocation of monthly payments and proceeds proceeds from a sale. This was a sale. There were proceeds from the sale which should have been allocated according to that formula and were not. And indeed, when Strugalla asked for the Form 1098 in 2014, they told her specifically, no, you didn't pay any interest in that year. But where was the deed of trust all this time? You didn't have the deed of trust. I mean, we found it was we took that was part of the mortgage that your client entered into my drawer and looked at my I could find the deed of trust for my house. Well, what we had was provided to us by our client had the which had an allocation provision. But it's not a big stretch of no responsibility to think that there's also an attached deed of trust. And maybe you should look at it. But there was no reason to think at the time. And we thought there was an allocation provision. We looked at it. We pled it. And then, you know, two years down the road, a court ruled that that allocation provision didn't apply to proceeds. And so then we looked, OK, well, we have a deed of trust. But in any event, I mean, Flagstar, in opposing the request to amend the burden. And, you know, the key factor is prejudice. And there's no prejudice to Flagstar here from an amendment. First of all, others are litigating a different case for four years because the case was stayed for most of that time. Or however long they had a litigated. But but there's no scheduling order, no trial date, no discovery. Rule 26 disclosures hadn't been exchanged. The court itself recognized that if that there was no bad faith on our part, that was a finding specific, which Flagstar, you know, tried to counter in its original brief. But now it's corrected. There was no bad faith. There was only, quote, unquote, some delay. And so that the end and the amendment was not futile. I mean, that that is. Well, that's the question is why it wasn't futile. And which I discussed before. Well, I have another question. Do you want to address your fraud claim? Do I want to amend my fraud claim? I'll address the fraud claim. Sure. Fraud claim was pled because Flagstar intentionally knew it made an error in 2011. Chose not to follow the law, which would have required it to issue corrected forms. Ten ninety eight. There's a IRS regulation right on point. And the instructions for preparation of ten ninety eight forms is right on point. As soon as you discover an error, you're supposed to promptly, i.e. within 30 days, issue corrected forms. Ten ninety eight. If Flagstar had done that, everything would have been fixed. They chose not to because they didn't want to open the hornet's nest, which would have been the case if they had issued all sorts of corrected forms. Ten ninety eight to people who then would have had to pay substantial additional taxes because they had overreported their interest because Flagstar had overreported it to them. Then once they decided, well, we're not going to tell anybody. Then they started this retroactive program of trying to fix in one year what they blew in another. And this court itself has issued opinions saying in the Laguna case say you can't do that. Each tax is its own universe. You can't start borrowing from Peter to pay Paul in this way. And it's also the lack of disclosure that Flagstar could have said to everybody, we're going to do this. We're going to make up your interest payments. But that would have given people the opportunity to say no. Instead, what it did was it allowed Flagstar to try and hide it. And ultimately, there's another part of the fraud claim, which is that in 2014, as I alluded to, when Lisa Strugala called Flagstar and emailed her and asked her, ask them specifically, why didn't you issue me a form ten ninety eight? Flagstar lied to her and said, we didn't issue you a form ten ninety eight because you didn't pay any interest in that year. And that's just false, even under their economics. And so what they did was concealment. They did it for their own benefit. They did it to avoid IRS penalties. They did it to avoid negative press. And so they knew exactly what they were doing and they did it anyway. That's how the fraud claim works. You're down to about four or three minutes, a little under four minutes. You want to reserve. I just want to address the supposed ambiguity. Sixty fifty age. And it just isn't. The court found it was ambiguous at the beginning of this litigation. We submitted a ton of authority that all supports the fact that capitalized interest is a subset of interest generally. And as a subset, the greater includes the less the statute requires aggregate of interest that is received to be reported. And, you know, the student loan context, the graduated payment mortgage context, all of that leads right to that conclusion. Does the smoker case. All right. I will reserve the rest. Thank you. All right. I'm not sure we can see you now. So welcome. Thank you, Your Honor. Good afternoon, Your Honors. May it please the court. Before I turn to the substance of plaintiff's claims, I'd like to start by addressing the issue of standing. The district court found standing based solely on a payment of seven hundred and fifty dollars that plaintiff made to her accountant more than two years after this case began. We think that that payment is not sufficient to establish standing because it cannot be fairly traced to flag stars actions in this case. Before plaintiff filed her original return for 2012, she had already determined. She also knows that whatever the district court said, she alleged other injuries. What was that? Because of the way this was done, she ended up paying more taxes than she would have had they originally filed. What she believes was correctly and you say wasn't necessarily correctly with regard to the interest in the early time period, because she now earns more and owes more. So that's another. So, yes, on that issue, what Judge Davila said is that it was insufficient to just say that the deductions would have been more valuable in 2012 than they were in 2007 to 2010. You needed you. She had the numbers. She could show whether or not she was in a different tax bracket. Why? I mean, she alleged it. I mean, she can prove it. That's your problem. But she mentioned, well, but when she amended the complaint for the purpose of providing that calculation, the time period that she needed to go to 2007 to 2010, what she did is for 2007. She conceded that there was no difference. And so she didn't lose any money because of that deduction for 2008. She gave some numbers from the taxes, but didn't actually allege anything about whether the deduction was more or less valuable than for 2009. She alleged that the deduction she took in 2009 would have been more valuable by eight hundred and forty three dollars in 2012. And in 2010, she said nothing about the complaint. So for the four years, we don't have a calculation to actually substantiate the the broader conclusory allegation that it would have been worth more. And even after giving another chance and knowing that Judge Davila, what did that calculation? She said nothing about two of the years conceded no change for one year and limit and limited it to eight hundred and forty three dollars for the other year. So I think it's important when you think when you think about her, her theory and how she claims she was alleged. I don't think she can pick and choose one single year from the four, because what happens is what is because the actual injury she's alleging is an injury based on the amount of the deduction she took in 2012. And the theory is that had she known about the way the 1098 were reported in 2011, she would have amended her returns for 2007 to 2010, taking that additional deduction all in 2012. So the theory all involves 2012 being worth more than the sum of 2007 to 2010. Judge Davila. My reaction. I don't want to make you detract from your merits argument, which seems to me I thought was pretty strong, except that you do not think so because you're spending. I'm happy to turn to the merits, Your Honor. So, you know, I'm the I'm the breach of contract claim. I think this would be, you know, it would be, frankly, a revolutionary change to to contract law to say that you could assert a breach of contract based on any provision of federal law. And I think it's telling. They said they cite this broad canon of of construction about you read contracts against the backdrop of law. But yet and that's it. That's a canon that's been around for a century. And yet they identify no case in which a court allowed someone to assert a breach of contract claim based on an implicit term of federal law. So, you know, we think that's, you know, Judge Davila had it right. There was not an implicit term. So fraud. And then I do want to talk about the leave to amend on fraud. You know, in a lot of ways, their fraud claim does turn on the ambiguity because really, their their claim that Flagstar had a duty to disclose that they had made a mistake and correct their ten ninety eight depends on there being one and only one proper way to report under ten ninety eight. Because what they're saying is like because Flagstar changed its reporting practice, that necessarily meant it had been doing it wrong. But if the provision. They didn't tell us. And what they actually did when they changed the reporting practice was invalid or illegal. And they didn't tell us that either, because they couldn't start. I mean, if they had just changed it prospectively, that would be one thing. But that is what they did. They started trying to make up for the mistake without telling anybody. That's what they were doing. Detriment and invalid. That's the claim. Right. But in order for them to state a fraud claim based on a failure to disclose, there must be a duty to disclose. And they they base that duty to disclose on this obligation from the tax code to correct misstatements. This wasn't the only question in this statement. They sent them the tax forms each year showing what the interest was that they paid. And that interest that they showed actually was not the interest they paid that year. It was the interest that they paid that year minus overpayments from other years. So in that way, they made affirmative misrepresentations. Is that not true? No, I don't. I don't believe so. Because 2012, what the reporting changed in 2011, and they're alleging in 2012, the mistake they're alleging in 2012 is that there was no 1098 given. And that's what they allege. There wasn't. We didn't provide a 1098 in 2012. And so that's different. There are allegations. They say that it was improper to try to make changes to backdate it. But that's not what Ms. Strugala, her experience. What happened is in 2012, there was a short sale. And so then that becomes a different issue of whether when a short sale occurs, whether any of the interest that had accrued in prior years, whether that should be reported on the 1098. What about 2008? In 2011, as I read the complaint, there's no longer an allegation. There's not an allegation that she was harmed by the tax return from 2011. But I think that would still, even if there was, it would still fit into our view and our theory and what the district courts that have looked at these cases have said, that if there is ambiguity here and there is more than one way that you could report interest on a 1098, correctly, then it's not, can't provide the basis of a fraud claim. I mean, if we start with the basic principle. There's no ambiguity about the fact that you can't make up in 2011 for mistakes made in 2007, 8, and 9. Is there? What's the? I'm sorry, Your Honor, what was? There's no ambiguity about the fact that you can't make up in 2011 for mistakes made in 2007, 8, and 9. Is there any ambiguity about that? I mean, we certainly don't say that we did that, right? I mean, that comes back to the point that, like, they haven't established that there was a mistake in 2007 through 2010 because it's our position that. But is there any doubt that you reported in 2011 less than the interest that was actually paid in 2011 on any theory? No, I mean, I think the obligation would be to accurately report in 2011, right? So that's. I thought the allegation was you didn't do that because you then subtracted overpayments from the earlier years. And I take it to mean, well, one, I guess I'm going to go under that surface. But I'm coming back and saying I don't think that there's support for that characterization of what happened in 2011 unless they establish that what had happened earlier, that the bank was wrong and that the bank knew that it was wrong. I also don't understand them to be stating a claim based on what happened in 2011. I understand it to be based on what they think could have and should have happened in 2012. So if I could touch on this issue of the ambiguity. The plaintiffs are heavily focused on this issue of when does the taxpayer have the right and the ability to take the deduction? That is a separate issue. I mean, they're related, but they're separate. They're governed by separate statutes. Then when does the bank report this interest? As good evidence to show that they don't align completely is that the IRS requires banks to print on the 1098, caution, you may not be able to deduct the entire amount that appears on the 1098. The IRS has also provided guidance to show it works the other way. There's guidance that says you may be able to deduct more than what is shown on your 1098. If you determine that you can, you take the larger deduction and you submit a written statement for why you think you're entitled to a larger deduction. So if we look at it, even if we look at the smoker case that the plaintiffs rely on so heavily, a critical part of that decision is the fact that the taxpayer there was paying taxes on a cash basis. The decision draws a distinction and shows that taxpayers can pay on a cash basis or on an accrual basis. What happened in Smoker is that the cash basis taxpayer looked at a statute, and the statute that governs this is 26 U.S.C. 163a, and it actually states that interest may be deducted when it is paid or accrued. But what the tax court said in Smoker is for a cash basis taxpayer, you can only deduct the amount of cash that you actually pay. The other portion, if you make the minimum payment and that results in some interest being added to the principal, we effectively view that as a promise to pay. It's the equivalent of delivering to the bank an additional promissory note. It adds to the amount of your loan. And you, as a cash basis taxpayer, you don't get to deduct it at the time that you make this additional promise. You have to wait until the end when you actually pay the cash and take that. But if you look at it then from the bank's perspective, in 6050H, you have a circumstance in which your cash basis taxpayers, for them, they can't take the deduction up front. They take it at the end. But for your accrual basis cash payers, they take it up front, and they don't take it at the end. And if you look at the transaction from the bank's perspective, each month they're receiving a cash payment for some amount, and as Smoker says, an additional promise, an additional promissory note to make up the difference. And if you look in the language of the statute, 6050H, it says, what does the bank receive? And there's nothing that requires straining the meaning of receive to say that a bank receives a promissory note or an additional promise to pay. I mean, that's, you look at a bank's balance sheet and the value of the loans the bank is holding, those are valuable assets to the bank. And so there's no reason why it was clearly wrong, would have been clearly wrong from 2007 to 2010, to view that what the bank was receiving was the entire amount of the interest that it was entitled to receive under the contract. So, you know, in a lot of ways, the approach from 2007 to 2010 more closely aligned to what an accrual basis taxpayer would do. The approach 2011 to pass that is more closely aligned to what a cash basis taxpayer was saying. But that's why courts have said we need guidance. The IRS has put this on the list to offer guidance, because if you look at the text of the statute, it doesn't tell the bank you should limit it to cash. You shouldn't take into account additional loans or promises being made. So if I could turn quickly, I want to make one at least one point on the leave to amend. I think a critical point first would start with, you know, a lot of this is talking about when do they have the deed of trust as if this is newly discovered evidence. I mean, this is a contract and they want to assert a breach of contract claim. The promissory note expressly incorporates the deed of trust because the deed of trust is the security for the promissory note. So in the California law, it's clear that you interpret those two contracts in light of each other. And so what they're saying, the deed of trust, what they're now saying is the deed of trust was breached in March 2012 upon the short sale. Under California law, you get four years for a breach of contract. And yet they didn't raise this until 2018. So I think the prejudice is clear. If you allow a breach of contract claim to be asserted two years after the statute of limitations would have run. And I see my time's out. So one final point on that. And that is that this new theory that there's a breach of the allocation provision in the deed of trust is directly contrary to what's alleged in the second amended complaint. This is an ER 219 paragraph 36 and footnote five. And there they specifically allege that Flagstar complied with the allocation provision in the deed of trust. If I hear, as I read from the footnote, when Flagstar received the proceeds from the short sale, it properly allocated those proceeds to retiring plaintiff's interest balance and then applied the remainder to retiring principal. So they want to amend the complaint six years after the contract is allegedly breached to allege the exact opposite of what the complaint currently alleges. If there are no further questions, I'll don't have any time, I guess, to cede. Thank you. Your Honor. Thank you, Counsel. Mr. Vandler. I want to address the standing. They just have it wrong in terms of what we alleged. And I think our complaint is very specific about the three different kinds. I think Judge Berzon, you had it right. So that's point one. Let me ask you.  What's the amount of damage that you're claiming? Well, it depends on how you calculate them. The way we calculate them is somewhere in the order of $30,000 to $60,000. Okay. Thank you. The Hernandez case does say specifically that there is a duty to service a mortgage. And that's what we are, in the implied contract, looking to. So when he says we didn't cite any cases. We don't have any case anywhere. I'm sorry? Is there any case in California law that says the service in the mortgage? That's for Hernandez case. I'm sorry. Complying with tax reporting requirements? No. No. I would contend that servicing a mortgage includes that. The greater includes the less. The this whole new notion that what they did in 2007 through 11 is part of the ambiguity is also wrong. I started never contended before today that what they did in 2000 prior to 2011 was correct. They always said it was wrong. But then I thought that was the point. All along was that it was ambiguous. The ambiguity is whether or not payments of capitalized interest at all are reportable. Not whether or not to take whether accrued payments should be reported or accrued interest. That was never the ambiguity. The ambiguity was whether or not capitalized interest was interest for purposes of reporting at all. Nobody ever said that accrued but unpaid interest that Flagstar never received is somehow OK. That was just wrong. And from there, they were in a hole and they kept digging. That's what they did there. In terms of deduction versus reporting. Yes, there is a distinction between the two. They're not always the same. But if you look at the purpose for 6058, it is to align as much as possible the amount reported to the amount that's deductible. That way the IRS can track it. If you start saying that one has nothing to do with the other, then there's no point in having Form 1098 reporting at all. And we set forth the various exceptions like a parental loan or something whereby a 1098 will not issue. That does not excuse Flagstar, who's in this business, from reporting correctly. Thank you, Counsel. The case just argued will be submitted for decision and we'll proceed to oral argument on the next case on the calendar. Thank all of you. Thank you, Your Honors. Thank you.
judges: Schroeder, Thomas, Berzon